---

In re YLIA.

(District Court, N. D. New York. June 26, 1916.)

1. USURY ⬅➡80—EFFECT OF—CHATTEL MORTGAGES.
   Where, when a loan was made, it was agreed that the borrower should pay, not only the amount of the loan and lawful interest, but an additional sum and interest thereon, such agreement is usurious, and avoids a chattel mortgage given to secure the loan.
   [Ed. Note.—For other cases, see Usury, Cent. Dig. §§ 158–160; Dec. Dig. ⬅➡80.]

2. BANKRUPTCY ⬅➡228—REFEREE—ORDER OF.
   An order of the referee in bankruptcy, based on the testimony heard by him and not heard by the court, should be given the weight of a verdict, and, where supported by evidence, will not be disturbed.
   [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 387; Dec. Dig. ⬅➡228.]

3. USURY ⬅➡117—TRUTH OF—EVIDENCE.
   For an agreement to be held bad for usury, the proof of usury must be clear and satisfactory.
   [Ed. Note.—For other cases, see Usury, Cent. Dig. §§ 328–340; Dec. Dig. ⬅➡117.]

In Bankruptcy. In the matter of the bankruptcy of Trendafil Ylia. On review of an order of the referee in bankruptcy, holding that a certain chattel mortgage is not void for usury and directing that same be paid from the proceeds of the sale of the mortgaged property; the property having been sold and the proceeds held for determination of the question of title or right under such mortgage. Affirmed.

Higbee, Lay & Malpass, of Syracuse, N. Y., for trustee.

Nash, Britcher & Eckel, of Syracuse, N. Y., for mortgagee claimant.

⬅➡For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

RAY, District Judge. [1] July 16, 1914, George Powell loaned to Trendafil Ylia, now bankrupt, the sum of $1,200, and in consideration thereof and to secure the payment of the loan Ylia gave to Powell his promissory note and a chattel mortgage to secure same, each for $1,284, with interest. This was $84 more than the loan, and the mortgage recited a present indebtedness of $1,284. Later Powell attempted to collect this entire amount, with interest on the entire amount, and filed a claim in bankruptcy therefor, reciting the mortgage and that $1,285 and interest was due him thereon November 19, 1915, but later this was changed to a claim for $1,200 and interest, after an answer had been interposed pleading usury.

If there was an agreement entered into at the time this loan of $1,200 was made that the now bankrupt should pay, not $1,200 and lawful interest thereon, but $1,284 and interest thereon, and pursuant thereto a note of $1,284, secured by a mortgage, the mortgage in evidence and claimed on here was given, and this agreement was mutual, and understood by both the parties to the transaction, such agreement would be usurious, and the chattel mortgage in question would be void. It is not questioned in the case that Ylia, the now bankrupt, intended to make such an agreement, and have it accepted, and become bound thereby so far as the papers executed under such an agreement would or could bind him.

[2, 3] But the claimant, George Powell, contends, and the referee has found, in substance, that both parties are Macedonians, with a limited knowledge and vocabulary of the English language, and a slight knowledge only of our commercial and business terms and usages, and that the now bankrupt had greatly the advantage of Powell in those respects: that Powell had never given or received a note or a chattel mortgage, and was not eager for interest, but desired security for the loan, and was prevailed on to make the loan, and was willing to make it because of a former favor rendered by the bankrupt to a brother of Powell; that Powell at no time expressed a desire for an excessive or unlawful rate of interest, or made a request or demand therefor; that, on the other hand, the now bankrupt, after he found Powell was willing to make the loan, expressed his gratitude and eager willingness to pay liberally up to 7 or 8 per cent. interest, but that Powell declined all such offers, and, on the other hand, only required, requested, or demanded that he have at the end of the year his $1,200 and 4 per cent. interest. The referee also finds that the papers, note and chattel mortgage, were drawn by a lawyer at the request and under the direction of Ylia, and that, while Powell was present at the time, he was so ignorant of English and of what was said that he did not understand or comprehend that $1,284 and interest, instead of $1,200 and interest, was expressed in the papers.

In short, the referee finds as a fact on all the evidence that Powell never knowingly entered into or assented to any contract or agreement by which he was to receive for or on this loan an excessive rate of interest, more than 6 per cent., and that the directions to the attorney who drew the note and mortgage, and which directions came from

Ylia, were unknown to Powell and "emanated from generous and persistent impulses to reciprocate the kindness of his fellow countryman," Powell. The referee exonerates Ylia from any design or purpose to secure a usurious contract or agreement of which he could take advantage and escape payment of the principal and interest. It takes two to make a contract, and while, ordinarily, we would conclude that a person who takes a note and a chattel mortgage for $1,284, when the loan was $1,200 only, ought to understand and know what he was doing and receiving, we have here a finding by the referee, who saw and heard all the witnesses, that Powell did not in fact know or understand what was proposed by Ylia, and never made or assented to any agreement by which he was to have an excessive rate of interest or any bonus for the loan in any form.

I am not disposed to disturb this finding of the referee, which was based on evidence, and the truthfulness of those who gave the evidence was peculiarly for the referee, who had opportnuity to both see and hear. It cannot be said as matter of law that the finding of the referee was either contrary to or unsupported by the evidence, and it should be treated as the verdict of a jury. This court did not have an opportunity to either see or hear these witnesses. Then, again, an agreement to take usury ought to be clearly and satisfactorily proved.

There will be an order affirming the decision and order of the referee, and for the payment of the amount of the chattel mortgage from the proceeds of the sale of the mortgaged property now in court.